# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY R. NOWAK,

    Defendant.

Case No. 2:13-cr-00132-LDG (VCF)

**ORDER**

    The defendant, Jeffrey R. Nowak, moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (ECF No. 178), which motion the Government opposes (ECF No. 184).

    Nowak argues that the government first disclosed, at his sentencing, that it had forgiven the 2006 tax liability of Ramzi Suliman, a co-defendant who testified against him, as part of Suliman's plea agreement. He asserts that this evidence was material to (but not merely impeaching of) Suliman's credibility. The Court disagrees that the government's disclosure–that the calculation of the amount Suliman owed as restitution did not include Suliman's tax liability for 2006–is newly discovered evidence that is material and would, if introduced at a new trial, probably result in Nowak's acquittal. Accordingly, the Court will deny the motion.

Background

In April 2013, the government indicted Nowak and Suliman for conspiring to defraud the United States by evading federal income taxes. As estimated in the indictment, Nowak owed additional taxes in the amount of $569,013 for the 2006-2009 tax years and Suliman owed additional taxes of $606,169 for the same period.

In 2014, Suliman entered into a plea agreement and pled guilty. Pursuant to the plea agreement, Suliman agreed "to make full restitution in the amount of $428,003." The parties also agreed that "[t]he Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines and restitution. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant."

Suliman testified as a government witness against Nowak at Nowak's trial in August 2016. During cross-examination by Nowak, Suliman testified as follows:

Q: Now, in your Plea Agreement, what was the amount of tax that you were supposed to pay to the Internal Revenue Service?

A: Uh . . . the amount of . . . I owe?

Q: Correct.

A: I think it was 600 something based on the numbers they had. But then I had to pay with the plea bargain, you know. There was 428,000 I had to pay and I paid it.

Q: So the Indictment said Ramzi Suliman owes over $600,000 but the Plea Agreement says you only have to pay 428,000; is that correct?

A: I think they waived –

. . .

A: they waived the penalties and stuff.

. . .

Q: And if you could explain that again to the members of the jury. The indictment said you owed over $600,000, yet you got a bargain of 428 on the Indictment. Can you explain that to us?

A: Well, what I understand from the way my lawyer explained it to me, it was like waiving some of these tax penalties and I don't know, interest and stuff like that, I guess. So they came up with the amounts, you know. So I thought it's okay, you know, I can – I have a loan against my stuff and then paid it off.

Q: So, it was 200 – over 200,000 less than what you were charged with?

A: Not over 200,000. It's 600 something. 602 or something. I paid 428. So it's less than 200,000, yeah.

Q: So you got a pretty good deal, didn't you, Mr. Suliman?

A: Well, I – I – I wanted to pay whatever they – just to reach – to reach the plea bargain. That's what I – I wanted to pay anything they want. But they came up with this number; I was happy with it.

Prior to Nowak's sentencing, the parties agreed that the government established, at Nowak's trial, that he owed $421,206 in additional taxes for the years 2006-2009. The parties also agreed that Suliman owed $469,879 in additional taxes for the years 2006-2009. Accordingly, the tax loss caused by the conspiracy for which Nowak was convicted was $891,085.

During the sentencing, counsel for the government explained the $41,876 difference between the additional taxes owed by Suliman ($469,879) and the amount ($428,003) that Suliman and the government had agreed–in Suliman's Plea Agreement–that Suliman would pay as full restitution:

> I actually negotiated the underlying Plea Agreement with Suliman, I was the only person in this room who was in that room. The negotiation was to not include the loss attributable to his 2006 taxes in his restitution payment and part of that decision was, as you heard at trial, he was not actively involved in the conspiracy for 2006.

Analysis

"A new trial is not warranted under Rule 33 unless a defendant can establish five elements: '(1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would

probably be acquitted in a new trial.'" United States v. King, 735 F.3d 1098, 1108 (9th Cir. 2013) (*citing United States v. Berry*, 624 F.3d 1031, 1042 (9th Cir.2010)).

## The Newly Discovered Evidence

Nowak argues that the newly discovered evidence is that the government agreed to forgive Suliman's tax liability for the year 2006. He first discovered this evidence when the government revealed it at his sentencing (and thus after his trial). Nowak's argument rests upon a mischaracterization of the government's statement, at his sentencing hearing, regarding Suliman's restitution obligation under the Plea Agreement. The government did not state that it had forgiven Suliman's 2006 tax liability. Rather, and more accurately, the government stated that the plea negotiation resulted in an agreement to not include Suliman's tax liability for the year 2006 in calculating the restitution that Suliman would owe pursuant to the Plea Agreement.

As noted previously, Suliman and the government agreed that Suliman would pay $428,003 as "full restitution." Nowak and the government agree that Suliman's tax liability for 2006 was $41,876. Accordingly, the "evidence" disclosed by the government's statement at Nowak's sentencing was that Suliman's restitution obligation under the Plea Agreement was $41,876 less than the taxes he actually owed to the government. That the "full restitution" obligation was less than the taxes owed did not, however, amount to a forgiveness or waiver of Suliman's outstanding $41,876 tax obligation. Suliman and the government also agreed, in the Plea Agreement, that other government agencies could pursue civil and administrative remedies against Suliman. In practical terms, the IRS retained the right to pursue Suliman's tax obligations that remained outstanding after his restitution payments. Accordingly, and at most, the government disclosed at sentencing that it had agreed to accept, as full restitution from Suliman, an amount of money that was less than the taxes he actually owed. Stated conversely, Suliman received the "benefit" of

4

owing "full restitution" in an amount less than the taxes he actually owed, but did not receive the "benefit" of having the difference waived or forgiven by the government.

### The Defendant's Diligence in Seeking the Evidence

The defendant argues that, as neither he nor his counsel were present during the negotiations between the government and Suliman, no amount of diligence would have permitted him to discover what occurred during the negotiations. The argument is irrelevant. At issue is not what occurred during negotiations, but whether the defendant was diligent in seeking evidence that the amount of restitution the government agreed to accept from Suliman as "full restitution" (about $428,000) was less than the taxes Suliman actually owed (about $469,000). Because Nowak was fully aware of the amount of restitution the government agreed to accept from Suliman as "full restitution," the relevant inquiry regarding Nowak's diligence is whether he was diligent in seeking evidence of Suliman's actual tax obligation.

Nowak contends that, in criminal tax cases, determining an individual's actual tax liability remains in flux through the end of trial. As such, performing the numerous calculations to determine the taxes Suliman actually owed would have been an impossible task.

While Nowak argues that the task of calculating the actual taxes owed by Suliman would have been impossible, he has not offered any evidence either that the government did not disclose the information necessary for the calculation, or that he actually engaged in an effort to calculate the taxes that Suliman actually owed. Rather, he has only offered his unsupported argument that it would have been impossible for him to determine Suliman's actual tax owed. Conversely, the government notes that it met its discovery obligation by fully disclosing its calculation of Suliman's individual tax liability for the years 2006-2009. While Nowak argues that the amount of a person's tax liability remains in flux through the end of the trial, he has not offered any evidence that the government's

5

calculation of Suliman's tax liability changed subsequent to Suliman's Plea Agreement. Accordingly, Nowak has not shown that he acted diligently in seeking evidence that the amount of restitution paid by Suliman under his Plea Agreement was less than the taxes that the government calculated he actually owed, and that the difference was about $41,000.

<u>Materiality, Merely Impeaching, and Probability of Acquittal in a New Trial</u>

Even assuming that the government's agreement–to accept "full restitution" from Suliman in an amount less than the taxes he owed–constituted "newly discovered evidence," and assuming Nowak had been diligent in seeking this evidence, the evidence is not material but is merely impeaching, and would not probably result in an acquittal in a new trial.

Given the circumstances of this motion and Nowak's prior trial, the factors of whether the new evidence is material, is not merely impeaching, and would probably result in a new trial are strongly intertwined. During his trial, Nowak cross-examined Suliman regarding the government's agreement to accept, from Suliman, about $428,000 as "full restitution" as part of the Plea Agreement. The evidence was impeaching because it concerned a benefit that Suliman, who was testifying for the government, had received from the government. Specifically, the government had agreed to accept, as full restitution, an amount of money that was about $175,000 less than the $606,169 that the government had alleged, in the indictment, that Suliman owed as taxes for the years 2006-2009. The evidence underlying the present motion is of a similar impeaching nature: it also concerns the benefit Suliman received as a result of the government's agreement to accept $428,000 as full restitution. The distinction between the evidence offered at the first trial and the "newly discovered evidence" is that the "newly discovered evidence" establishes that the benefit to Suliman was that the government agreed to accept, as full restitution, an amount of money that was about $41,000 less than the $469,879 that the government had

6

calculated he actually owed as taxes for the years 2006-2009.  Accordingly, whether a new trial is warranted requires consideration of that distinction between the evidence of the benefit to Suliman that was presented to the jury at Nowak's trial, and the evidence of that benefit that would be proffered at a new trial.

In cross-examining Suliman, Nowak sought to establish the benefit Suliman received from the government by referencing the difference between the taxes the government had alleged were owed by Suliman in the Indictment and the restitution amount the government agreed to accept.  In answering Nowak's questions, Suliman did not testify that most of the difference (about $135,000) between the amount alleged in the indictment and the amount of restitution was because the government had calculated that Suliman's actual tax liability was about $469,000 rather than $606,000.  Rather, Suliman's answers instead left the jury with the impression that the entire difference (more than $175,000) was due to a waiver of penalties and interest and other "stuff."  While Nowak points out that Suliman's answers were inaccurate because he attributed the difference to the government's waiver of penalties and interest, he overlooks that Suliman's answer was also inaccurate as to the value of the benefit ($175,000 rather than $41,000).  Whether intended by Nowak or not, the "evidence" conveyed to the jury by Suliman's answers was that he had received a "pretty good deal" because the government agreed to waive collection of more than $175,000 from him.  Despite this impeachment of Suliman, the jury nevertheless determined that Nowak was guilty.  Accordingly, the inaccurate "evidence" that the government had waived collection of more than $175,000 owed by Suliman amounted to merely impeaching evidence, rather than materially impeaching evidence.

The impeaching nature of the evidence underlying Nowak's present motion is less compelling than the result of the cross-examination.  Though the evidence presented to the jury during the cross-examination was inaccurate, the inaccuracy inured to the defendant's benefit.  The accurate testimony, which is the evidence at issue in this motion, would have

been that, in agreeing to accept $428,000 as full restitution, the government decided to not include Suliman's 2006 tax liability in the restitution calculation (without waiving the government's right to civilly pursue the 2006 tax liability).  It is this accurate testimony that Nowak would be offering at a new trial to impeach Suliman: that the government agreed to not include $41,000 in a restitution calculation.  As impeachment evidence, this accurate evidence of the benefit Suliman actually received is less compelling than the inaccurate testimony regarding that benefit that Nowak elicited from Suliman during his cross-examination.

Nowak argues that, at his trial, the government made no effort to correct Suliman's inaccurate testimony that the government waived only penalties and interest and failed to properly instruct the jury that it had forgiven $41,000 in taxes.  The argument fails, at the outset, because the government did not forgive $41,000 in taxes, but rather agreed to not include the 2006 taxes in calculating restitution (without waiving the right to civilly collect the taxes).  However, even assuming the government had forgiven the $41,000 in taxes, the Court disagrees that the legal basis for Suliman's debt to the government is significant.  Regardless of whether the government waived penalties or interest on unpaid taxes, or instead forgave some of the underlying unpaid taxes, Nowak's jury received evidence (albeit incorrect) that the value of this benefit to Suliman exceeded $175,000 rather than evidence that the value of the benefit to Suliman was about $41,000.  The government's failure to correct Suliman's inaccurate testimony was to Nowak's benefit.  As such, presenting the accurate, but less damaging, evidence at a new trial would not probably result in an acquittal.

Accordingly, even if newly discovered and diligently sought by the defendant, the government's agreement to accept $428,000 as "full restitution" from Suliman when it had determined that Suliman owed $469,000 in taxes (while preserving the right to civilly collect the $41,000 difference), is not material evidence, but is merely impeaching evidence, and

would not, if presented at a new trial to impeach Suliman, probably result in Nowak's acquittal. Accordingly,

THE COURT **ORDERS** that defendant Jeffrey Nowak's Motion for New Trial (ECF No. 178) is DENIED.

DATED this 1 day of September, 2017.

_____
Lloyd D. George
United States District Judge